## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ELIAS HORTA GAYTAN, | : | |
| | : | |
| Plaintiff, | : | Civil. No. 14-3395 (RBK/JS) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| G&G LANDSCAPING CONSTRUCTION, | : | |
| INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**KUGLER**, United States District Judge:

This suit concerns alleged violations of the federal Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"), and related state law claims. Plaintiff Elias Horta Gaytan ("Gaytan") brings these claims against Defendant G&G Landscaping Construction, Inc. ("G&G"). Presently before the Court is G&G's Motion for Summary Judgment ("Defendant's Motion" or "Def.'s Mot." [Dkt. No. 24]). For the reasons set forth below, Defendant's Motion will be **DENIED-IN-PART** and **GRANTED-IN-PART**.

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court recites those facts relevant to deciding the pending motion for summary judgment, and resolves any disputed facts or inferences in favor of Gaytan, the nonmoving party. *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 134–35 (3d Cir. 2013).

The events giving rise to this lawsuit stem from Gaytan's employment at G&G, a landscaping business based in Columbus, New Jersey and owned by non-party Jeffrey Grouser. (Grouser Aff. (Def.'s Ex. A) ¶¶ 1–3; Gaytan Decl. (Pl.'s Ex. A) ¶ 2.) Gaytan began working for G&G from around March 2004 until May 2013. (Def.'s Statement of Undisputed Material Facts

1

("DSMF") ¶ 1; Pl.'s Response to DSMF ("PSMF") ¶ 1.)[1]  Gaytan only worked the months of March through December each year.  (DSMF ¶¶ 1–2; PSMF ¶¶ 1–2).  He initially worked as a laborer, then as a foreman, and in October 2009 began working as both a foreman and a salesman in accordance with the "Sales Man Guidelines."  (DSMF ¶¶ 2–3; PSFM ¶¶ 2–3; Def.'s Resp. to Interrogs. (Pl.'s Ex. R) at Interrog. No. 4).  The Sales Man Guidelines provided that Gaytan would be paid "18.00 per hour on time spent selling, designing and estimating jobs." (Sales Man Guidelines (Def.'s Ex. B & Pl.'s Ex. U) ¶ 1.)

In his work as a laborer and foreman, Gaytan was required to arrive at 6:45am, fifteen minutes prior to his scheduled start time of 7:00am to perform activities in the shop ("Shop Time Work").  (Gaytan Decl. ¶¶ 2–4.)  In 2006 or 2007, G&G began paying monthly bonuses to Gaytan and other employees.  (Gaytan Decl. ¶ 6; Grouser Aff. ¶¶ 9–11.)[2]  When Gaytan complained to Grouser that he was not being paid for his shop time work, Grouser responded that G&G was not obligated to pay Gaytan for that work.  (Gaytan Decl. ¶ 6.)

Additionally, Gaytan claims that he spent between five and fifteen hours per week performing work under the Sales Man Guidelines ("Sales Man Work") from October 2009 onward for which he has not been paid the appropriate $18.00 per hour wages.  (Gaytan Decl. ¶¶ 8–11.)  G&G takes the opposite view, that Gaytan was paid $18.00 per hour for his Sales Man Work.  (Grouser Decl. ¶ 6.)

---

[1] The parties disagree about the year in which Gaytan began his work for G&G; Gaytan claims he began work in 2004 (PSMF ¶ 1) and G&G claims he began work in 2005 (DSMF ¶ 1).  For the purposes of the issues before the Court, whether Gaytan began working in 2004 or 2005 is immaterial, and to the extent it may be relevant, the Court will assume Gaytan began working in 2004, as Gaytan is the non-moving party.
[2] G&G claims that the bonuses were meant to incentivize employees to arrive early (Grouse Aff. ¶ 12), whereas Gaytan claims the bonuses were instituted to address complaints about work conditions.  (Gaytan Decl. ¶ 6.)  This disparity is addressed in Section III.A.2, *infra*.

In May 2013, Gaytan stopped reporting to work at G&G.  (DSMF ¶ 14; PSMF ¶ 14.)

Subsequently, in May 2014, Gaytan filed this suit bringing claims under the FLSA and the New

Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, et seq. ("NJWPL"), as well as state law breach

of contract and unjust enrichment claims.  G&G now moves for summary judgment on the FLSA

claims with respect to the Shop Time Work and for summary judgment on the NJWPL, breach of

contract, and unjust enrichment claims with respect to the Sales Man Work.

## II.      JURISDICTION

Gaytan brings claims under the FLSA, the NJWPL, and state common law.  Accordingly,

this Court exercises federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and

supplemental jurisdiction over the accompanying state law claims pursuant to 28 U.S.C. § 1367.

## III.     LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).   A genuine

dispute of material fact exists only if the evidence is such that a reasonable jury could find for the

non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When the Court

weights the evidence presented by the parties, "[t]he evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The moving party bears the burden of establishing that no genuine issue of material fact

remains.  *See Celotex*, 477 U.S. at 322–23.  A fact is material only if it will affect the outcome of

a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is

such that a reasonable fact finder could return a verdict for the nonmoving party.  *See Anderson*,

477 U.S. at 252.  Even if the facts are undisputed, a disagreement over what inferences may be

drawn from the facts precludes a grant of summary judgment.  *Ideal Dairy Farms, Inc. v. John*

*Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).  Further, "any unexplained gaps in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment."  *Id.* (quoting *Ingersoll-Rand Fin. Corp. v. Anderson*, 921 F.2d 497, 502 (3d Cir. 1990)) (internal quotations and alterations omitted).

The nonmoving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial."  *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).  The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter.  *Anderson*, 477 U.S. at 249.

## IV.   DISCUSSION

G&G moves for summary judgment on (1) the FLSA claims for unpaid Shop Time Work;[3] and (2) the NJWPL, breach of contract, and unjust enrichment claims for unpaid wages under the Sales Man Guidelines.  The Court will address each of these in turn.

### A.   FLSA CLAIM

Gaytan claims that G&G failed to pay him the appropriate overtime premium for his Shop Time Work.  (Pl.'s Opp. [Dkt. No. 28] at 3–11.)  He alleges that this violates the FLSA, specifically 29 U.S.C. § 206(b) for failure to compensate him for every hour worked and 29 U.S.C. § 207(a)(1) for failure to pay him overtime compensation.  (Compl. [Dkt. No. 1] ¶¶ 22–24.)  G&G argues that Gaytan was paid a monthly "attendance bonus" for reporting fifteen minutes prior to the start of his scheduled shifts, which satisfied its obligations to him.  (Def.'s

---

[3] Gaytan in his opposition notes that G&G "does *not* seek dismissal of [Gaytan]'s FLSA claim concerning his unpaid salesman work."  (Pl.'s Opp. at 14.)  G&G does not address this in their reply, and so the Court understands this to mean G&G agrees with Gaytan's position.  The logical extension of this is that even if the Court granted G&G's Motion, the case would proceed to trial on Gaytan's FLSA claim for unpaid wages under the Sales Man Guidelines.

4

Mot. at 8–10.)  Further, G&G states that it has "properly compensated [Gaytan] for all hours worked."  (*Id.* at 8; *see also* Grouser Aff. ¶¶ 5, 13.)  G&G additionally takes the position that the Court need not address whether or not the shop time work actually constitutes overtime on the grounds that G&G has adequately compensated Gaytan, but still provided briefing on the issue.  (Def.'s Mot. at 8–10).

In response, Gaytan submits that the issue of whether shop time work is overtime is a necessary issue to be decided, and also submits arguments for why G&G has failed to adequately compensate him for overtime as a result of his shop time work.  (Pl.'s Opp. at 3–9.)  For the reasons that follow, there are demonstrated disputes of issues of material fact, making summary judgment inappropriate.  Therefore G&G's motion will be denied with respect to the FLSA claim.

## 1.    SHOP TIME AS COMPENSABLE TIME

G&G argues that "[t]he question of whether the act of [G&G]'s employees loading trucks before departing for jobs constitutes compensable activities under the FLSA is before this court, but it is not necessary to reach this issue, because [G&G] could not violate the statute where he paid his employees for this time."  (Def.'s Mot. at 10.)  However, this puts the proverbial cart before the horse—in order to determine whether the employees were adequately compensated, it must be determined whether the time qualified as compensable time.

It is undisputed that any time Gaytan worked over 40 hours would be considered overtime under the FLSA.  29 U.S.C. § 207(a)(1).  The question is whether or not the fifteen-minute period between 6:45am and 7:00am qualified as time for which G&G needed to pay Gaytan.  This is material to Gaytan's claims, but the parties do not actually appear to dispute whether the time was compensable.  For guidance on this issue, both parties point to the recent Supreme Court case of *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513 (2014), and a

district court decision pre-dating the *Integrity Staffing* decision, *Gonzalez v. Bustleton Services, Inc.*, Civ. No. 08-4703, 2010 WL 1813487 (E.D. Pa. Mar. 5, 2010).

Under the FLSA as modified by the Portal-to-Portal Act,[4] employers are not required to pay employees for travel time or for "activities which are preliminary or postliminary to . . . principal [job] activity or activities."  29 U.S.C. § 254(a)(2).  In *Integrity Staffing*, the Court reaffirmed the standard that "principal activity or activities" encompasses "all activities which are an integral and indispensable part of the principal activities."  *Integrity Staffing*, 135 S. Ct. at 517 (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29–30 (2005) (internal quotations omitted)).  The Court further explained that "an activity is integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities."  *Id.* at 518.  The Court held that the security screenings the respondents in *Integrity Staffing* underwent were akin to checking in and out of work, and that respondents would be able to perform their principal activity—retrieving products from warehouse shelves—without the security screenings.  *Id.* at 518–19.  Thus, the Court rejected the respondents' FLSA suit.

The decision in *Gonzalez*, although pre-dating *Integrity Staffing*, is still informative, as *Integrity Staffing* did not create a sea change in the law.  The plaintiffs in *Gonzalez*, also landscapers, would spend between 30 and 45 minutes in the morning loading the truck, and approximately 30 minutes in the afternoon doing end-of-day chores back at the shop.  *Gonzalez*,

---

[4] As originally enacted, the FLSA did not define "work," necessitating a fix from Congress in the form of the Portal-to-Portal Act, Pub. L. No. 80-49, 61 Stat. 84 (1947), after the Supreme Court in *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590 (1944) provided an expansive interpretation to the term "work."  *See* 29 U.S.C. § 251 (findings of Congress justifying passage of the Act, declaring it necessary "to meet the existing emergency and to correct existing evils"); *Integrity Staffing*, 135 S. Ct. at 516–17 (detailing the legislative history).

2010 WL 1813487, at *2.  In loading the truck, the plaintiffs would load tools and attach trailers to the landscaping trucks.  *Id.* at *10.  The court in *Gonzalez* held that these activities triggered the start of plaintiffs' work day, as long as "the employer knew or had reason to know that the work was being permitted."  *Id.* (citing 29 C.F.R. § 785.11).  Accordingly, the plaintiffs' morning time was deemed compensable overtime under the FLSA.

Here, Gaytan's activities loading the truck in the morning are highly analogous to the activities of the plaintiffs in *Gonzalez*.  G&G admits as much in its brief and offers no facts to distinguish the instant case from the facts in *Gonzalez*, other than claiming that G&G has fully compensated Gaytan.  (*See* Def.'s Mot. at 9–10.)[5]  As to the nature of the Shop Time Work, G&G states that the work was "loading trucks before departing for jobs"—the exact way G&G characterizes the activity held to be compensable in *Gonzalez*.  (*Id.*)  Gaytan describes the shop time work as "loading trucks with necessary tools and materials, checking the tire pressure, oil and other fluids in the truck, and greasing machines needed for that particular day."  (Pl.'s Opp. at 9–10; Gaytan Decl. at ¶ 4).

It is clear that this kind of work was "integral and indispensable to the principal activities."  *See Integrity Staffing*, 135 S. Ct. at 517.  As such, the Shop Time Work is compensable time under the FLSA.

## 2.    ADEQUACY OF COMPENSATION UNDER THE FLSA

G&G's sole basis for summary judgment on Gaytan's FLSA claim is that Gaytan has been fully compensated by G&G for his Shop Time Work.  (Def.'s Mot. at 10.)  In support of this contention, G&G submits voluminous pay records and time sheets, without giving the Court

---

[5] It is not necessary for the Court to resolve the dispute between the parties of whether G&G required Gaytan to arrive 15 minutes before the start of his shift time; G&G has admitted that Gaytan did in fact arrive at 6:45am for his scheduled shifts, and that Gaytan was paid a bonus for that work.  (DSMF at ¶ 11; Grouser Aff. at ¶ 11.)

7

any guidance as to how the records confirm or deny that Gaytan was paid for his Shop Time Work.  (Def.'s Exs. 1 & G.)  Gaytan opposes on the basis that he was not fully compensated under the FLSA under three broad theories:  (1) assuming the bonus does properly compensate, the timing of the payment is improper under the FLSA; (2) the nature of the bonus itself shows that it does not properly compensate for Shop Time Work; and (3) there are four months where no bonus was paid, failing to fully compensate him even if it appropriate.  (Pl.'s Opp. at 3–9.)

It is not necessary for the Court to address the specific details of Gaytan's various theories for why his claims succeed.[6]  In order for this Court to grant G&G's motion, there would need to be no genuine issue of material fact over whether G&G paid Gaytan for all of his Shop Time Work and whether such payments were in accordance with the FLSA.  G&G has failed to demonstrate this, and Gaytan has succeeded in bringing forth "more than a scintilla of evidence" to defeat G&G's motion.  As an initial matter, the fact that Gaytan directs this Court to at least four instances when he was not paid a bonus belies G&G's assertion that they have fully compensated Gaytan.  This itself is enough to defeat G&G's motion.

On the purpose of the bonuses themselves, G&G claims that the bonuses were instituted as an incentive to get workers to arrive early.  (Grouser Aff. ¶ 12.)  Gaytan, on the other hand, argues that the bonuses were the result of employee complaints about working conditions.  (Gaytan Decl. ¶ 6.)  G&G's position, however, is undermined by the fact that G&G paid Gaytan a flat $100 during the relevant time period without regard to the number of days worked or the amount of time spent doing Shop Time Work.  The record is undisputed as to this fact.  The parties do not appear to dispute that Gaytan did in fact work fifteen-minute periods of shop time

---

[6] It would be necessary had Gaytan filed a cross motion for summary judgment.  Not having done so, this Court will not evaluate whether each of his theories has undisputed material facts sufficient to grant summary judgment.

work each day he clocked in for non-office work.  As Gaytan summarizes in his opposition, and

G&G does not dispute, his actual days of work fluctuated between 17 and 23 days per month, but

each month he was only paid $100.  (*See* Pl.'s Opp. at 4; *see also* Pl.'s Exs. C, D, E, F, & G.)

The only time during the relevant time period that Gaytan was paid any amount other than $100

was when G&G docked him $5 as a penalty for failing to clock in or out properly during the

month.  (*See* Pl.'s Ex. B.)

Further, even if this Court were to assume that Gaytan were fully compensated, G&G

ignores the fact that payment of overtime compensation in this manner may be a violation of the

FLSA in and of itself.  The Department of Labor ("DOL") has provided an interpretive bulletin

on the FLSA, codified in Part 778 of Title 29 of the Code of Federal Regulations.  *See* 29 C.F.R.

§ 778.1.  Gaytan directs this Court to § 778.106, which provides that:

> The general rule is that *overtime compensation earned in a particular workweek
> must be paid on the regular pay day* for the period in which such workweek ends.
> . . . *Payment may not be delayed for a period than is reasonable necessary for the
> employer to compute and arrange for payment of the amount due* and in no event
> may payment be delayed beyond the next payday after such computation can be
> made.

29 C.F.R. § 778.106 (emphases added).[7]  The Third Circuit has not commented directly on how

this interpretive bulletin applies when an employee is fully compensated for his work, but other

courts have found a violation of the FLSA "even if the employer eventually pays the overtime

---

[7] "[A] court is not required to give effect to an interpretive regulation.  Varying degrees of
deference are accorded to administrative interpretations, based on such factors as the timing and
consistency of the agency's position, and the nature of its expertise."  *Batterton v. Francis*, 432
U.S. 416, 425 n.9 (1977).  However, this specific provision has been relied upon by other courts
in this district with approval from the Third Circuit.  *See Brooks v. Vill. of Ridgefield Park*, 185
F.3d 130, 135–36 (3d Cir. 1999) ("We believe the DOL bulletin [29 C.F.R. § 778.106] is a
reasonable construction of the FLSA."); *Cahill v. City of New Brunswick*, 99 F. Supp. 2d 464,
473–74 (D.N.J. 2000) (relying on *Brooks* to find that § 778.106 provided a basis for finding a
violation of 29 U.S.C. § 207(a)).

amount that was due." *See, e.g.*, *Howard v. City of Springfield*, 274 F.3d 1141, 1148 (7th Cir. 2001); *see also Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 700–07 (1945) (finding an employee entitled to liquidated damages under the FLSA when overtime was fully paid more than two years later).

Thus, the timing, manner, and amount of the payment are all relevant factual inquiries for determining whether G&G has violated the FLSA.  G&G has not demonstrated to this Court that there is an absence of factual dispute on any of these issues, having neglected to address these in its opening brief or its reply brief.  Accordingly, summary judgment will be denied on Gaytan's FLSA claims with respect to unpaid Shop Time Work.

### 3.    FLSA STATUTE OF LIMITATIONS

The parties also dispute the appropriate statute of limitations that should apply in this action for the FLSA claim.  Actions under FLSA have a presumptive two year statute of limitations, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  Gaytan argues that G&G's actions were willful, and thus bringing him under the three-year statute of limitations period.  (Pl.'s Opp. at 8.)  G&G submits that the action properly falls under the two-year limitations period, because a violation of the FLSA, if any, was not willful.  (Def.'s Mot. at 8.)

In order for Gaytan to sustain his allegation that this was a willful violation of FLSA, Gaytan must prove "that [G&G] either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 (1984)).  "[A]n employer has not willfully violated the FLSA if it acts reasonably in determining its legal obligation."  *Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 273 (3d Cir. 2010) (citing

10

*Richland Shoe*, 486 U.S. at 135 n.13).  Whether a violation of the FLSA is willful is a question of fact.  *Id.*

Gaytan has shown to the Court that he had informed at least two of G&G's employees, including its owner, that he was not being fully compensated for his Shop Time Work, to which G&G's owner replied that G&G was not obligated to pay Gaytan for the Shop Time Work.  (*See* Gaytan Decl. ¶ 6.)  This is enough for Gaytan to defeat any claim for summary judgment on this issue, as the evidence viewed in the light most favorable to him provides for the reasonable inference that G&G recklessly disregarded its obligations under the FLSA.  Therefore, summary judgment is improper and to the extent G&G's motion seeks a determination on willfulness, it will be denied.

### B.  STATE LAW CLAIMS REGARDING UNPAID SALES MAN WORK

G&G moves for summary judgment to dismiss Gaytan's state law claims as they relate to the unpaid sales man work.  With respect to the NJWPL, G&G moves under an understanding that Gaytan's claim is based on a theory that G&G failed to pay Gaytan the commissions owed to him under the Sales Man Guidelines.  (Def.'s Mot. at 10–12.)  Gaytan in his opposition explains that his claim is actually based on "recover[ing] $18.00 per hour for the approximately 5 to 15 hours of uncompensated Sales Man [W]ork he performed each week since October 2009." (Pl.'s Opp. at 11.)  Additionally, Gaytan has submitted to the Court that he is no longer seeking to recover any unpaid commissions for his Sales Man Work, but is "only seeking the bare minimum compensation he is entitled to" for the Sales Man Work.  (Pl.'s Opp. at 14; *see also* PSMF ¶ 8; Pl.'s Opp. at 11 n.12.)

G&G is correct that the NJWPL does not apply to commissions and bonuses.  *See* N.J.S.A. 34:11-4.2 (defining wages as "excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto");

11

*Sluka v. Landau Uniforms, Inc.*, 383 F. Supp. 2d 649, 656 (D.N.J. 2005) (granting summary

judgment to employer on NJWPL claim regarding bonuses and commissions).  Therefore, to the

extent G&G's motion seeks summary judgment on unpaid commissions, the motion is granted.

    However, in all other respects regarding the state law claims, G&G's motion must be

denied.  The only remaining theory under which Gaytan brings his claims under state law is for

the $18 per hour wages that G&G has allegedly failed to pay Gaytan since October 2009.  Thus,

the central dispute for all of the state law claims is whether G&G did in fact pay Gaytan for all of

his Sales Man Work.[8]

    Gaytan argues that "there is a genuine issue of material fact regarding whether [G&G]

paid [Gaytan] for all of his Sales Man [W]ork," and this Court agrees.  (Pl.'s Opp. at 14.)  G&G

has submitted voluminous records of time sheets and pay stubs in support of its assertion here,

still without providing the Court any guidance as to what parts support G&G's argument.  (*See*

Def.'s Exs. 1 & G.)  Gaytan does not disagree with the actual records; his argument is that they

prove he was not fully compensated.  The law is clear that "[s]ummary judgment may not be

granted if there is a disagreement over what inference can be reasonably drawn from the facts

even if the facts are undisputed."  *Ideal Dairy Farms*, 90 F.3d at 744 (quoting *Nathanson v. Med.*

*Coll. of Pa.*, 926 F.2d 1368, 1380 (3d Cir. 1991)).  Gaytan's inference that the pay records

demonstrate an absence of pay for work he performed is a reasonable one.  So too is G&G's

inference that the pay records demonstrate Gaytan was fully compensated.  These two possible

---

[8] Much of Gaytan's opposition to granting summary judgment on his NJWPL claim is premised
on an incorrect understanding of G&G's motion.  Gaytan argues that his $18.00 per hour salary
cannot possibly be considered a bonus or supplementary incentive under the NJWPL.  (Pl.'s
Opp. at 11–14.)  The Court does not understand G&G's motion to argue otherwise; rather, G&G
argues that the commissions are not wages, and that G&G has otherwise fully compensated
Gaytan, which precludes granting him any relief under the NJWPL.  (Def.'s Mot. at 10–12.)

constructions of the facts suggest a genuine issue of material fact about which a jury could disagree.

Additionally, actual evidence in the record supports Gaytan's inference.  G&G's pay records show that on April 9, 2010, Gaytan performed one hour of "Office Functions – Meetings/Estimating".  (Def.'s Ex. 1 at 60.)  G&G's admission is that such work qualifies as Sales Man work.  (Darvas Aff. (Def.'s Ex. F) ¶ 8.)  Looking at the April 2010 pay calendar, there is no annotation on April 9th to indicate that Gaytan worked one hour of Sales Man work as there is in other instances when Gaytan performed and was paid for Sales Man work.  (*Compare* Def.'s Ex. 1 at 54 (April 2010 calendar) *with id.* at 2 (October 2009 calendar showing annotation for "sales" on October 23, 27, 28, and 30).)  A reasonable jury could conclude that this is evidence of failure to pay Gaytan for all of his Sales Man Work.

This Court will not undertake to review all of the evidence in the record—that is for the parties to present to the fact finder at trial.  However, this one incident qualifies as "more than a scintilla of evidence" in order to defeat summary judgment.  *See Woloszyn*, 396 F.3d at 319. Accordingly summary judgment is improper, and on the issue of payment for Sales Man Work with respect to the state law claims, G&G's motion will be denied.

## V.    CONCLUSION

For the foregoing reasons, G&G's Motion for Summary Judgment will be granted-in-part with respect to the unpaid commissions under the NJWPL and denied in all other respects.  An appropriate order accompanies this opinion.

Date:  November  6th , 2015


 s/ Robert B. Kugler
ROBERT B. KUGLER, U.S.D.J.